UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHAESOM R. SEARS,

Plaintiff,

v.

ROCKET MORTGAGE, LLC, et al.,

Defendants.

No.  2:25-cv-0409 TLN AC PS

FINDINGS AND RECOMMENDATIONS

Plaintiff is proceeding pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  This case was commenced on January 30, 2025, and the First Amended Complaint was filed on April 11, 2025.  ECF Nos. 1, 14.  On April 29, 2025, defendant U.S. Bank moved to dismiss.  ECF No. 19.  Plaintiff opposed the motion.  ECF No. 28.  The same day, defendant Rocket Mortgage LLC separately moved to dismiss.  ECF No. 23.  Plaintiff opposed the motion.  ECF No. 29.  U.S. Bank's motion was granted, but plaintiff was granted leave to amend his claim brought under the Truth in Lending Act ("TILA") against U.S. Bank.  ECF No. 36 at 2.  Rocket Mortgage's motion was granted in part and denied in part, such that plaintiff was given leave to amend his TILA claims against Rocket Mortgage, and plaintiff's claim against Rocket Mortgage under the Real Estate Settlement Procedures Act ("RESPA") survived.  Id.

Plaintiff filed the operative Second Amended Complaint ("SAC") on October 23, 2025,

1

re-alleging a RESPA claim against Rocket Mortgage, and TILA claims against both U.S. Bank and Rocket Mortgage.  ECF No. 37 at 4-5.  U.S. Bank moves to dismiss the SAC.  ECF No. 39. Rocket Mortgage also moved to dismiss the SAC.  ECF No. 42.  Plaintiff opposes both motions. ECF No. 45.  The motions were submitted for a decision without oral argument.  ECF No. 41, 44.

## I. Background

A. The Second Amended Complaint

Plaintiff brings this action against Rocket Mortgage LLC and U.S. Bank National Association for violations of federal law arising out of plaintiff's mortgage loan, which originated on March 8, 2024, and which plaintiff alleges was improperly transferred and securitized without notice.  ECF No. 37 at 2.  According to the Second Amended Complaint ("SAC"), plaintiff submitted multiple Qualified Written Requests ("QWRs") under RESPA to obtain information about the loan transfer and servicing, but did not receive an adequate response.  Id.  Specifically, plaintiff sent letters to Rocket Mortgage asking it to identify the current owner, assignee, or creditor of the loan, a complete payment history, a full accounting, copies of all assignments, transfers or endorsements on the Note and Deed of Trust, and the information of any entity authorized to enforce the Note.  Id. at 2-3.

Plaintiff sent requests on November 14, 2024, and again on November 27, 2024.  ECF No. 37 at 2-3.  On November 22, 2024, Rocket Mortgage responded to the requests but "failed to identify the true loan owner or provide the requested assignments," instead dismissing the request as "unduly burdensome" and enclosing only documents already in plaintiff's possession.  Id. Plaintiff received another response on December 27, 2024, repeating the objections.  On June 10, 2025, plaintiff's property was sold at a trustee's sale.  Id. at 3.  Plaintiff alleges the foreclosure was directly caused and exacerbated by defendants' statutory violations.  Specifically, plaintiff alleges Rocket Mortgage's failure to provide adequate responses to his QWRs deprived him of critical ownership information, and Rocket Mortgage's and U.S. Bank's failure to provide written notice of the loan transfer as required by TILA prevented him from identifying the true creditor, asserting defenses, or pursuing loss mitigation.  Id. at 4.  Plaintiff included copies of the QWR's and Rocket Mortgage's written responses, as Exhibits C-F to his SAC.  Plaintiff also attached to

2

his complaint the affidavit of a "Mortgage Securitization Expert," Jospeh Esquivel.  ECF No. 37 at 7 ("Esquivel Affidavit").

B.  Judicial Notice

Defendant Rocket Mortgage asks the court take judicial notice of the following documents which are submitted as exhibits in support of their motion: (A) Grant Deed recorded August 1, 2017, Instrument Number 2017-087054; (B) Deed of Trust, recorded March 13, 2024, Instrument Number 2024-021265; (C) Corporation Assignment of Deed of Trust recorded on October 10, 2024, Instrument Number 2024-096359; (D) Substitution of Trustee recorded December 27, 2024, Instrument Number 2024-117487; (E) Notice of Default and Election to Sell under Deed of Trust, recorded December 27, 2024, Instrument Number 2024-117488; (F) Notice of Trustee's Sale recoded March 31, 2025, Instrument Number 2025-0226236; and (G) Trustee's Deed Upon Sale recorded on June 10, 2025, Instrument Number 2025-049395.  ECF No. 43 at 2-3.

The court takes judicial notice of the above referenced documents because they are public records.  "A court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The existence and contents of these publicly recorded documents can be accurately and readily determined, and judicial notice is appropriate.

The judicially noticeable documents establish the following chain of events.  Plaintiff acquired the Subject Property on or about July 26, 2017, as evidenced by Grant Deed dated July 26, 2017.  Request for Judicial Notice ("RJN") Ex. A.  On or about March 8, 2024, plaintiff executed a Deed of Trust securing a loan from Rocket against the Subject Property.  RJN Ex. B.  The Deed of Trust was recorded in the Official Records of San Joaquin County on March 13, 2024.  Id.  The Deed of Trust identifies Rocket as the lender, Heather Lovier as the trustee, and Mortgage Electronic Registration Systems ("MERS") as beneficiary, as nominee for Rocket, its successors and assigns.  Id.  Section 22 of the Deed of Trust provides that the Lender retains the

3

right to invoke the power of sale and to direct the trustee to initiate foreclosure in the event of default. Id. It also states that the Note could be sold one or more times without prior notice to Plaintiff. Id. at Section 19.

On or about October 8, 2024, the beneficial interest under the Deed of Trust was assigned from MERS to Rocket in a Corporation Assignment of Deed of Trust that was recorded on October 10, 2024. RJN Ex. C. On or about December 17, 2024, Rocket substituted National Default Servicing Corporation as the trustee under the Deed of Trust in a Substitution of Trustee that was recorded on December 27, 2024 in the Official Records of San Joaquin County. RJN Exhibit D. On the same date, December 27, 2025, a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded against the Subject Property in the Official Records of San Joaquin County. RJN Ex. E. The NOD also indicates that as of December 26, 2024, the amount of default on the mortgage payments was $19,908.58. Id.

As the mortgage payment default persisted, a Notice of Trustee's Sale ("NOS") was recorded against the Subject Property on March 31, 2025 in the Official Records of San Joaquin County. RJN Ex. F. The NOS states that a trustee's sale was set for May 8, 2025 and that the unpaid principal balance at the time was $367,208.09. Id. The Trustee's Deed Upon Sale indicates that the property at issue was sold at public auction to Rocket Mortgage as the high bidder on May 8, 2025. RJN Ex. G.

## II. Analysis

### A. Legal Standards Governing Motions to Dismiss

Plaintiffs must assist the court and defendant by drafting the complaint so that it complies with the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief;" Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Still, "sufficient factual matter" must make the claim at least plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Conclusory or formulaic recitations of elements do not alone suffice. Id. (citing Twombly, 550 U.S. at 555).

In accordance with Fed. R. Civ. P. 8(a), complaints must contain (1) a "short and plain

4

statement" of the basis for federal jurisdiction (that is, the reason the case is filed in this court, rather than in a state court), (2) a short and plain statement showing that plaintiff is entitled to relief (that is, who harmed the plaintiff, and in what way), and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a).  Plaintiff's claims must be set forth simply, concisely and directly. Fed. R. Civ. P. 8(d)(1).

"The purpose of a motion to dismiss under rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  To survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as

amended, 275 F.3d 1187 (2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Plaintiff Does Not State a TILA Claim against Rocket Mortgage or U.S. Bank

TILA section 131(g), codified at 15 U.S.C. § 1641(g), provides that if "a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer" within thirty days. To state a claim under TILA, a plaintiff must allege "when [his] loan was transferred" *and* that he detrimentally relied "upon an inaccurate or incomplete disclosure." Derusseau v. Bank of Am., N.A., 2012 U.S. Dist. LEXIS 42901, *11, 2012 WL 1059928 (S.D. Cal., March 28, 2012). In Derusseau, the court dismissed a TILA claim that was based on an allegation that the defendants transferred plaintiff's loan into a trust and failed to provide her with notice of the transfer under TILA. Id. The court reasoned that dismissal was necessary because the plaintiff failed to allege when the loan was transferred or that she detrimentally relied on the information. Id.

As in Derusseau, here plaintiff speculates that his loan was transferred and securitized into a trust but fails to allege when that securitization occurred. See ECF No. 14. Plaintiff's entire case is premised on the incorrect assertion that his mortgage loan was transferred to U.S. Bank as Trustee of the GNMA REMIC Trust 2024-060, that he never received notice of this transfer, and that this failure to provide notice amounts to a TILA violation. Plaintiff was given leave to amend his complaint to bolster these allegations (ECF No. 36 at 1), but his amendment actually

demonstrates that the loan was *not* transferred to U.S. Bank or any other entity.

In an attempt to show that securitization and transfer occurred, plaintiff attached to his SAC the affidavit of "Mortgage Securitization Expert" Jospeh Esquivel.  ECF No. 37 at 7. Though plaintiff claims Esquivel's affidavit supports his claim that his mortgage loan was securitized and transferred to U.S. Bank as Trustee of the GNMA REMIC Trust 2024-060, it actually contains admissions that plaintiff's mortgage loan was never transferred to the GNMA REMIC Trust 2024-060 or U.S. Bank.  Specifically, Esquivel states that "[t]here is no evidence that Guaranteed REMIC Pass-Through Securities and MX Securities Ginnie Mae REMIC Trust 24-060 ever received an ownership interest in the Chaeson R. Sears Note."  Esquivel Affidavit at ¶ 27.  Further, Esquival acknowledges that "there is no evidence or indication that Guaranteed REMIC Pass Through Securities and MX Securities Ginnie Mae REMIC Trust 2024.060 ever acquired ownership rights to the Chaeson R. Sears loan, note, Deed of Trust, the debt purportedly 'evidenced' thereby, and/or the real property purportedly 'secured' thereby."  Id. at ¶ 35.  Finally, Esquival states that "Guaranteed REMIC Pass-Through Securities and MX Securities Ginnie Mae REMIC Trust 2024-060 has never acquired rights to the Chaeson R. Sears Note and Deed of Trust[.]"  Id. at 36.

It is clear from these admissions as well as the publicly recorded records related to the loan that plaintiff's loan was never sold: it originated with Rocket Mortgage, and the loan and Deed of Trust were owned by Rocket Mortgage throughout their life up to and including the date on which Rocket Mortgage exercised its security interest under the Deed of Trust and took the property back by purchasing it at the foreclosure sale.  Plaintiff contends that U.S. Bank's reliance on publicly recorded documents is misplaced because the records "only show recorded assignments not whether beneficial ownership was transferred."  ECF No. 45 at 3.  Plaintiff contends that the recorded documents do not disprove his allegation, which is that "the loan was transferred off-record into the Ginnie Mae REMIC Trust 2024-050."  Id. at 3-4.  Plaintiff's assertion that despite all judicially noticeable publicly recorded documents demonstrating that his loan was not transferred, the loan was nonetheless secretly transferred off-record, is pure conjecture and is insufficient to state a TILA claim.  Accordingly, plaintiff's TILA claim must be

7

dismissed as to all defendants for failure to state a claim upon which relief can be granted.

C. Plaintiff Does Not State a RESPA Claim

Plaintiff alleges that Rocket Mortgage violated RESPA by failing to respond timely and adequately to his QWRs. ECF No. 37 at 4. Plaintiff attached copies of his QWRs (ECF No. 37 at 67-68, 74-80 ) and Rocket Mortgage's responses (ECF No. 37 at 71, 83) to the SAC. "The Real Estate Settlement Procedures Act ('RESPA') provides an action for damages against mortgage-loan servicers who fail to respond to *certain types* of inquiries from borrowers." Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 663 (9th Cir. 2012) (emphasis added). To determine whether a given inquiry triggers the duty to respond under RESPA, the court must determine if the inquiry was a " "qualified written request." RESPA defines a qualified written request as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Under § 2605(e)(1)(A), a servicer must respond to such a letter if it requests or challenges "information relating to the servicing of such loan." Id. § 2605(e)(1)(A), (e)(2).

"Servicing" in this context is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, [ ] and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Under RESPA, "servicing ... does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement," because "[s]uch events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." Medrano, 704 F.3d at 666–67 (emphasis omitted). Thus, "letters challenging only a loan's validity or its terms are not qualified

8

written requests that give rise to a duty to respond under § 2605(e)." Id. at 667.

Here, Rocket Mortgage asserts that plaintiff's inquiries extended beyond the scope of an appropriate QWR, and that their response to the portion of the requests that could be considered a QWR was adequate. ECF No. 42-1 at 7-9. The court agrees. Plaintiff's initial QWR, dated November 14, 2024, asked for a copy of the original signed contract bearing his signature, the name and location of the financial institution where a security deposit was held, proof of who funded the account, including a complete record of accounts with all documents, papers, correspondence, books of account, financial and corporate records. In addition, this request included a request for all documentation showing that Rocket legally owns the note, including a clear chain of title from the original creditor, an itemized statement of account, and a sworn statement under penalty of perjury attesting to the validity of the debt. ECF No. 37 at 67-68. Rocket Mortgage responded on November 22, 2024, noting that there had been previous correspondence from plaintiff to Rocket sent in "an apparent effort to discharge and/or rescind your loan" to which it had responded "in detail." Id. at 71. Rocket Mortgage went on to note that the request was unduly burdensome and overbroad, but Rocket did include a copy of the closing package to validate the debt, an appraisal, and Transaction History. Id.

Plaintiff sent a second inquiry to Rocket on November 27, 2024 that included 39 individual requests for various documents and information including servicing agreements, pooling agreements, descriptions of codes used in mortgage servicing and accounting systems, the front and back of each and every canceled check, all escrow analyses, all invoices for each charge made for an inspection report, appraisal, or BPO. ECF No. 37 at 74-80. Rocket Mortgage responded on December 27, 2024 that the inquiry was unduly burdensome and included requests for "a great deal of information that is not reasonably likely to assist you with your account." Id. at 83. Again, Rocket Mortgage responded to a portion of the request by including a copy of plaintiff's Appraisal, Closing Package executed March 8, 2024, and transaction activity to validate the debt, along with a copy of its earlier response. Id.

Plaintiff's 'all-encompassing requests for documents and records are not the type of information RESPA contemplates." Junod v. Dream House Mortg. Co., 2012 WL 94355, *3-4,

9

2012 U.S. Dist. LEXIS 3865 (C.D. Cal. 2012).  "It is apparent from the alleged QWR that Plaintiffs' request was unrelated to the servicing of the loan.  Rather, the alleged QWR largely request documents that relate to the original loan transaction and its subsequent history.  Hence, the requests as a whole seeks information on the validity of the loan and mortgage documents.  Such requests do not fall within the confines of RESPA."  Id.  Plaintiff's inquiries fall outside the scope of what RESPA intended QWR's to be.  "That a QWR must address the servicing of the loan, and not its validity, is born out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan."  Consumer Solutions REO, LLC v. Hillery, 658 F. Supp.2d 1002, 1014 (N.D. Cal. 2009).  Further, rather than ignoring the inquiries entirely, Rocket Mortgage did respond with servicing related information.  ECF No.  37 at 71, 83.  The court agrees with Rocket Mortgage that the facts presented by plaintiff in the SAC make clear that Rocket Mortgage did not violate RESPA, and accordingly plaintiff fails to state a claim upon which relief can be granted.

### III.  Leave to Amend Not Recommended

Further leave to amend is not appropriate in this case.  Ordinarily, pro se litigants are granted liberal leave to amend.  "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."  California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988).  Here, given the defects described above and the fact that plaintiff has already had an opportunity to amend, the undersigned finds that additional leave to amend would be futile and should therefore not be granted.

### IV.  Conclusion

The undersigned RECOMMENDS that both defendants' motions to dismiss (ECF Nos. 39 and 42) be GRANTED in full and that this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: February 9, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE